BOUTALL, Judge.
The appeal in this suit for personal injuries and damages comes before us on procedural issues of remittitur under C.C.P. Article 1813, as well as issues of liability and quantum on the merits. The case was tried before a jury which gave verdict in favor of plaintiff Lewis T. Bland in the sum of $28,-000. After lengthy and complex legal proceedings, the trial judge granted remittitur reforming the judgment to $7,500. The defendant has appealed and the plaintiff has answered the appeal.
At the outset it is necessary to consider the procedural posture of this case because there is a serious issue before us as to whether this appeal should be entertained on the merits or remanded to the district court for a new trial. The judgment of remittitur is not in conformity with C.C.P. Article 1813 and did not offer the alternative of a new trial as therein provided. See for example Lynch v. Derryberry, 341 So.2d 902 (La.1977) reversing the judgment of the Court of Appeal reported in 339 So.2d 507, and remanding to the trial court for compliance with C.C.P. Article 1813. However, we believe that our case may be distinguished from that case, and it is necessary to consider the involved procedural matters that led up to its present appearance in this court.
After trial the jury found the verdict in favor of plaintiff Bland for $28,000 on the 27th day of November, 1974. That same day the court rendered a judgment in accordance with the jury verdict. Within the delay period for a new trial the defendants filed a motion for remittitur of judgment and alternatively a motion for a new trial, praying for remittitur to the sum of $3,500 plus all proved special damages and court costs. The trial judge granted a new trial. Plaintiff then sought to appeal from this decision and the court denied the appeal stating its reasons. The court said that there was no remittitur and the new trial was granted because of the excessiveness of the award, that far too much weight was apparently given to the testimony of Dr. Blaise Salatich by the jury and their award was excessive. The court then noted that this was an appeal only from a judgment granting a new trial which was not an appealable judgment. However, the plaintiff shortly thereafter filed another petition for a devolutive appeal and for some reason the devolutive appeal was granted on February 20, 1975. The defendant countered with a motion to dismiss the appeal, and *551 this court in a per curiam decision on April 15, 1976 dismissed the appeal.
After unsuccessfully applying to the Supreme Court for writs from dismissal of his appeal, the plaintiff then on November 15, 1976 filed a motion for reconsideration of the interlocutory order by reason of change of circumstance. In this motion the plaintiff alleged that Dr. Salatich, who was the treating physician of plaintiff, had since the trial become permanently disabled from the practice of medicine and is completely prohibited by his own physician from testifying concerning any former patients. He prayed that the order of new trial previously granted be recalled and the defendant’s motion for remittitur or alternatively new trial be reconsidered. The trial judge granted plaintiff’s motion, and the resulting judgment granting remittitur and reforming the verdict of the jury and the prior judgment to the sum of $7,500 is the subject of the present appeal.
We present herewith the pertinent reasons for judgment of the trial judge which offers a full explanation for his judgment and the basis upon which it was rendered.
“Now, the plaintiff this time has asked for a reconsideration of the Court’s order ordering a new trial and suggests that remittitur be again considered. This Court does not know of any precedent which would either permit or deny the plaintiff’s motion for a reconsideration of the remittitur or new trial order.
“The Court had previously suggested that remittitur be considered, because the Court was of the opinion that the jury verdict was excessive and because the jury placed too great weight on the testimony of Dr. Blaise Salatich. It has developed since the trial that Dr. Salatich is himself seriously ill, and cannot appear to testify again. It is apparent that if a second jury trial was had, the same evidence would be presented, and in this regard, the testimony of Dr. Salatich at the original trial would be considered perpetuated and merely read to the jury.
“In the interest of justice, obviating the necessity for a second jury trial, with the testimony of all witnesses already taken and transcribed, which can be reviewed by appellate courts, and since the law looks favorably upon ultimate disposition of cases and upon settlement or remittitur, and finally since both parties at one stage of the proceedings or another have asked for remittitur, this Court has decided to grant the plaintiff’s motion for remittitur.
“The Court is of the opinion that remit-titur is in order, and will grant same, reforming the jury’s verdict and its prior judgment thereon to read judgment in favor of the plaintiff and against the defendants in the sum of $7,500.00 with legal interest from judicial demand until paid and for all costs. In other words, the jury’s verdict and the Court’s judgment thereon are reformed to the extent of reducing the principal thereof from $28,000.00 to $7,500.00.
“In their respective motions for remit-titur, neither party has suggested a figure to which this judgment should be reduced. The Court, in exercise of its discretion, with full knowledge of all that has transpired in this case and having presided over the jury trial itself, has reduced the judgment as indicated above to $7,500.00.”
Basically C.C.P. Article 1813 gives a clear picture of remittitur and its application in the trial court. The court indicates the amount of remittitur and the time granted for consent. If no consent is granted, the judge orders a new trial. The judgment on defendant’s motion seems to be correct in form. However the judgment on reconsideration did not follow this format and simply reformed the judgment without the consent of either party and without ordering new trial for the stated reasons.
It is apparent that the judgment appealed from has not complied with the procedures stated in Art. 1813. The Supreme Court of Louisiana in the case of Miller v. Chicago Insurance Company, 320 So.2d 134 (La.1975) has offered a detailed commentary on the application of that law, and has attempted to rectify the considera *552 ble appellate confusion as to the application to appellate review. Although the judgment does not comply with the guide lines laid down, nevertheless, we feel that we must consider this matter on its merits and bring final resolution to this dispute between the parties tried some three had a half years ago.
As the trial judge points out, the main basis for his belief that the jury verdict was excessive was because of the testimony of Dr. Salatich, who cannot testify on a second trial, and yet, whose testimony is vital to a consideration of plaintiff’s injuries. Any new trial could only result in the use of his transcribed testimony being read to the new trier of fact, and since the Constitution of Louisiana provides us with authority to review both law and fact, we think that the same goal of avoidance of delay espoused by C.C.P. Article .1813 requires us to consider the merits of this case now, rather .than remand for new trial.
We now pass to a consideration of the issue of liability. Appellants contest the finding of liability on its driver on the basis of a sudden emergency not his fault and the contributory negligence of the plaintiff driver. The collision between the automobiles took place on a wet, rainy morning in the City of New Orleans at the intersection of Carondelet Street and Louisiana Avenue, which is controlled by electric semaphore signals. Plaintiff was proceeding on Carondelet Street in a downtown direction parallel to the river with cars in front and behind, all proceeding across the intersection on the green light. The defendant was driving on Louisiana Avenue proceeding in the direction of the river, perpendicular to plaintiff and ran into the left rear quarter panel of plaintiff’s automobile. Defendant concedes he had the red light, but seeks to excuse himself from the accident by testifying that as he sought to apply his foot brakes to stop in obedience to that signal, the brakes unexpectedly failed to work and he could not stop in time to avoid the accident. However, the investigating police officer reported that the defendant driver had told him that he had been having trouble with his brakes for several days and had added extra brake fluid to make the brakes operable. This was corroborated by plaintiff, who testified that he heard the defendant make the statement to the police officer. Although the defendant denies making such a statement, he concedes that the police officer did make a test on the brakes in his car and found the brake pedals went nearly to the floorboard. Accordingly, his defense of sudden emergency, if it was available to him in this case, has been disproven by the evidence.
Concerning the issue of contributory negligence, defendant contends that plaintiff should have somehow, been able to avoid the accident and suggested speeding up, turning, etc. The record lends no support whatsoever to any of the hypotheses advanced by defendant, and we see no need to discuss this matter in detail. The plea has no basis in fact.
ON THE ISSUE OF QUANTUM
The issue of quantum is necessarily bound up with the first issue discussed, the remittitur. As noted above, although there are some problems with the judgment of remittitur, basically it stands as a judgment of remittitur and the award was $7,500. Both plaintiff and defendant rejected the amount of the award and the defendant has appealed. In accordance with the principles set forth in Miller v. Chicago Insurance Company, supra, the review is therefore limited to the final judgment of the court reflecting the remittitur to determine if that award is within the “much discretion” contemplated by C.C. 1934. The plaintiff has answered the appeal asking for an increase in the award, and that issue is also under consideration before us in accordance with Miller, approving a prior decision of this circuit in Spizer v. Dixie Brewing Company, 210 So.2d 528 (La.App. 4th Cir. 1968).
At the time of the collision, plaintiff Bland made no complaints of injury. It was not until later that night while at work at the U.S. Public Health Service Hospital as a boiler mechanic, that Bland began feel *553 ing the results of the collision. He began noting pain in his neck and low back generally, which became more severe as the night wore on. The next day he consulted an attorney, who referred him to Dr. Blaise Salatich for examination and treatment. Bland contends it was five or six days post accident that he first saw Dr. Salatich, although Dr. Salatich testified that he was seen the day after the accident. Dr. Sala-tich’s physical examination showed muscle spasms in the neck with complaints of pain, limitation of motion and tenderness, and found some limitation of motion in the lower back and noted some tenderness there. He diagnosed a “traumatic whip lash” to the neck with stretching and tearing of ligaments and muscles and possible hemorrhage, and diagnosed a similar but less severe condition in the low back. X-ray examinations by a Radiologist, Dr. Hopkins, showed some asymmetry and flattening of the curvature of the neck, but noted nothing remarkable in the low back. Subsequent x-rays were interpreted to the same effect but to a lesser degree.
Plaintiff embarked upon .a course of treatment with Dr. Salatich until April 22, 1972, a period of a month and a half, which consisted of physical therapy, hot showers and baths at home, restriction of physical activity, and aspirin for the relief of pain. Dr. Salatich related that he did not consider that the plaintiff had been cured or rendered symptom free at the time of his last treatment, but that this man was required to work for a living, preventing his return for further treatment.
For whatever reason, the plaintiff received no further treatment for his injuries, but continued to work as a boiler mechanic for the Public Health Service Hospital and suffered no loss of time from his job. He does insist that he was prevented from doing his work completely and that it was only through the grace of co-workers that he was able to keep up with his job. He still complains of pains in his neck rather constantly, some days being much worse than others, and of pain on occasions in his lower back when his activities are much greater. In support of his continued pain and disability, he offered the testimony of several lay witnesses to show restriction of his social activities and a change in personality from a good natured happy individual to an irritable one. He contends he is entitled to not less than the award made by the jury of $28,000, and insists that his pain and suffering justifies an even greater award.
In opposition to this evidence, the defendant showed that the plaintiff has never lost any time off from work, and that even though his job consisted of occasionally lifting weights of 100 pounds or more, and was sometimes very strenuous in the maintenance of boilers, he has been able to do that work continuously. Defendant has produced an orthopedic surgeon, Dr. Hyman Sobo-loff, who testified that his examination of plaintiff showed no objective signs of injury, and who upon examination of the x-rays produced by plaintiff, explained that the asymmetry demonstrated in the later x-rays was probably due to mispositioning of plaintiff’s head during the x-ray process. At this time we should note that the interpretation of these x-rays is not based upon precise measurements, but to a large degree upon judgment calls by the examiner based upon his experience and expertise. However, we note that plaintiff was also examined by Dr. Thomas Oelsner, a specialist in internal medicine, who not only examined plaintiff for hemorrhoids which later developed and were alleged to be traumatically caused by the accident, but also performed a complete medical examination of the neck and back. Dr. Oelsner testified that Bland demonstrated on his examination a full range of motion in the neck and back and exhibited no pain or discomfort in those areas.
Corroborating the findings of these doctors, we further note that plaintiff underwent several annual physical checkups at the U.S. Public Health Service Hospital in connection with his job, and was also admitted to the hospital for treatment as a patient for burns suffered to his arm. At no time did any of these examinations ever disclose any problems with plaintiffs neck *554 or back, and plaintiff informs us that he made no reference to any such injuries or residual pain, because he was fearful of his job. The result of all of this evidence, taken in total, is to lead us to conclude that plaintiff suffered a soft tissue injury to the ligaments and muscles of his neck and back for a period of about 2 months, with some occasional residual pain thereafter. We conclude that the award of the trial judge of $7,500 was generous, but that it is within the range of discretion accorded him. We comment that the record discloses ample justification for his exercise of remittitur.
For the reasons above expressed, we affirm the judgment appealed from insofar as it awards judgment in favor of Lewis T. Bland against the defendants in the amount of $7,500, together with legal interest from date of judicial demand until paid and assess all costs of these proceedings against defendants.

AFFIRMED.